UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BIONCA FLEURY,**                                    Case No.: 2:21-cv-02373

Plaintiff                                             **Judge:** Darrel James Papillion

vs.

**SODEXO, INC.,**                                     **Magistrate Judge:** Karen Wells Roby

Defendant                                             **Jury Trial Requested**

*****************************************************************************

**Plaintiff's Reply Memorandum in Support of Plaintiff's Motion to Amend and Reconsider**

Plaintiff, Bionca Fleury ("Plaintiff"), by and through undersigned counsel, respectfully submit this Reply Memorandum in Support of the instant motion.

For reasons more fully discussed below, the instant motion should be granted.

**I.      Plaintiff's Precursor Statement**

Plaintiff respectfully suggests that a more sufficient and thorough response to this motion is needed and desired. Nevertheless, Plaintiff will attempt to respond to the best of her ability to be in compliance with the Court's order.[1] Plaintiff further respectfully suggests that several of the contentions and allegations alleged in the Defendant's Reply[2] require an opportunity to investigate the truthfulness of what they have purported. As previously discussed in other motions to Court, the Plaintiff's central witness has abruptly failed to cooperate with Plaintiff's investigation and is no longer communicating with Plaintiff or Plaintiff's counsel (despite several attempts since May[3]), contrary to her actions prior to being

---

[1] Rec. Doc. 52.
[2] Rec. Doc. 33-1.
[3] Specifically, in May, while attempting to reach Robinson, Plaintiff's counsel was informed that allegedly she had been in an accident and was in the hospital. Plaintiff's counsel respectfully halted her attempts for a couple of

1

contacted by the Defendant and signing a declaration[4]. Consequently, to acquire such information (evidence), Plaintiff will need to depose certain individuals, including Ms. Carrie Robinson. Plaintiff respectfully asserts that she will be prejudiced if not given this opportunity to fully address these assertions.

Moreover, on separate matter, the Plaintiff would like to correct a misstatement previously expressed to the Court. In the confusion of preparing for maternity leave and returning from the same, the Plaintiff's counsel inadvertently submitted that she first learned of the new evidence on December 19, 2022; however, after recently fully reviewing the case, the Plaintiff's counsel has determined that she actually learned of the evidence (four days earlier) on or about December 15, 2022.

Lastly, as Rec. Doc 23 and 25, have many overlapping issues and arguments, the Plaintiff requests that her arguments be incorporated in both motions.

II.     Law and Argument

A. **The July 2020 Incident was "Newly Discovered" information because Plaintiff was told about the July 2020 incident by Robinson but did not have personal knowledge of the incident because she was not present at that time.**

The Defendant asserts that just because the Plaintiff submitted the Robinson Statement to the EEOC and addressed the July 2020 incident in her statement to the EEOC, she was aware of the incident for the purposes establishing whether the offered evidence by the Plaintiff constitutes "newly discovered" evidence. However, the Plaintiff argues that the Defendant is wrong. First, the Plaintiff asserts that she never discussed this incident with her

---

weeks, giving Robinson time to recover. Subsequently, Plaintiff's counsel has made several attempts, in June, to contact Robinson but was immediately sent to voicemail. Finally, the more recent attempts indicate that Robinson has blocked Plaintiff's counsel phone number altogether. This is mind-boggling since previously (prior to Defendant contacting Robinson while Plaintiff's counsel was on maternity leave) Robinson had voluntarily reached out to Plaintiff and adamantly expressed her desire to be a witness for the Plaintiff.
[4] Exhibit F - Robinson Declaration.

counsel, prior to it being discovered.[5] Thus, her counsel was unaware of the incident. Second, the Plaintiff asserts that her knowledge was based on third party hearsay information. Consequently, Plaintiff asserts that just because she was told of the incident does not mean that she had personal knowledge of the incident to access it truthfulness. The Plaintiff asserts that even though she had visited the Defendant's workplace on that day, she was not at the Defendant's workplace when the incident actually occurred. Plaintiff asserts that she did not observe, witness, or see anyone call campus police on her. She did not hear what was purportedly communicated about her presence that day. Moreover, she was not at the Defendant's workplace when the campus showed up and what was communicated to them. Thus, the Plaintiff's lack of personal knowledge allows her to assert that the information is wholeheartedly "new discovered" information. "The facts — there has been no actual knowledge and it's strictly a hearsay type of statement, and you must have personal observation or knowledge of it."[6] In support of this argument, the Plaintiff asserts that although she mentioned this incident in her EEOC statement, she still prefaced it with the following: "I was told…"[7] Specifically, when she directly mentioned the July 2020 incident, she stated,

> "I was told after I got fired that she Summa did not think that it would have blow up this bad she wanted them to write me up or she wanted to be moved to the front office. I have witness to her lying about me, just recently, I was invited to submit a application with a new company that took over Sodexo's contract, I went on campus to fill out the application, and while I was on campus I stopped to say hi to my old workers, I only stayed for 5 min and left off campus. I was called around 12 noon that campus police came looking for a disgruntled worker, in which Ms. Carrie told them it was a lie, I came in to say hi and left, the officer name is Hingle and was told nothing was going on and that I was gone long ago."[8]

---

[5] In *McMahan v. Everyday Plumbing Company*, 368 So.2d 1227 (La.App. 4th Cir. 1979), the appellate court held that the trial court's refusal to grant plaintiff's motion for continuance was justified in light of the fact that counsel for plaintiff was unable to tell the court from his own knowledge why the plaintiff failed to appear.
[6] *State v. Warren*, 538 So. 2d 1036 (La. Ct. App. 1989).
[7] Exhibit C- Fleury Statement, p. 2.
[8] *Id.*

Clearly, the Plaintiff was reciting information that had been communicated to her by a third party. She cannot have personal knowledge over what another person knows.[9] However, such information, in that current state, was merely ambiguous evidence. Consequently, when the Plaintiff's attorney learned of this information she performed her duty to objectively investigate the facts. Upon making an independent determination that the facts were supported by reasonable factual basis, the Plaintiff filed the instant motion.

Notably, the statement submitted by the Plaintiff fails to establish such a factual basis. First, she does not have personal knowledge of the facts, as discussed above. Second, the only thing that this statement shows is that:

1. Plaintiff received a call at approximately 12pm.
2. Plaintiff was informed that the campus police was called concerning a disgruntled worker.
3. Robinson told the officer that there was no disgruntled employee.
4. The Plaintiff came to the Defendant's workplace to say hi.

The Plaintiff asserts that this alone, is not enough to make a factual basis that the Plaintiff was aware of the incident for the purposes of making allegations in a complaint or to survive a motion to dismiss[10]

The Defendant asserts that there is irrefutable evidence showing that Plaintiff knew about the July 2020 incident on the very day it allegedly happened and that Plaintiff's counsel was aware of that alleged incident no later than November 2020. Specifically, the Defendant relies on this assertion based on a witness statement which was included in the Plaintiff's EEOC file. However, the Plaintiff argues that the Defendant is erroneous in assuming that the aforementioned is irrefutable evidence.

---

[9] *Carter v. Trinity Event Staffing*, Not Reported in Fed. Supp. (2018).
[10] Defendants suggest that plaintiffs must "plead sufficient facts to put the defendants on notice as to the approximate date ranges, as well as the approximate number of hours worked for which the plaintiff claims he was under-compensated." England v. Admins. of the Tulane Edu. Fund, No. 16-3184, 2016 WL 3902595, at *3 (E.D. La. 2016).

First, the Plaintiff's counsel asserts that she was unaware of the witness's statement in November of 2020 as the Defendant wrongly contends. Moreover, the Plaintiff's counsel asserts that she never submitted any information on the Plaintiff's behalf to the EEOC nor did she ever have any communication whatsoever with the EEOC concerning the Plaintiff, during the administrative phase. Specifically, the Plaintiff's counsel submits that her first communication with the EEOC, on behalf of the Plaintiff, occurred on November 22, 2022[11] when she requested a complete copy of the Plaintiff's file and the receipt thereof on December 19, 2022[12]. Thus, the Defendant is well misguided to assume that the Plaintiff's counsel knew of the aforementioned July 2020 incident in November 2020. Moreover, and what is significant, the Plaintiff argues that if this were even true, she would have certainly asserted these allegations and arguments in her opposition to the Defendant's Partial Motion to Dismiss. It would be absurd to do otherwise.

Second, Plaintiff (the party, not her counsel) acknowledges that she submitted the witness statement to the EEOC while acting on her own behalf with respect to the administrative phase. However, the Plaintiff submits that this is implied. Any representation, in these pleadings, as to when the Plaintiff received new evidence from an EEOC file is obviously asserted by her counsel. In other words, the Plaintiff's counsel has to be individually aware of the evidence in order to assert any claims or arguments on the Plaintiff's behalf. The Defendant knows that the Plaintiff's counsel could never logically assert that Plaintiff (the party, not her counsel) received, for the first time, a witness's statement that she submitted to the EEOC. However, the Plaintiff asserts that this does not establish the Plaintiff has the requisite personal knowledge to substantiate the Defendant's assertions. Nevertheless, Plaintiff

---

[11] Exhibit E- Letter via email requesting Plaintiff's EEOC file.

did not communicate to her counsel that she had ever submitted this statement nor did she communicate the nature of the statement as of November 2020.

However, the Plaintiff's counsel asserts that to the Plaintiff's benefit, it is not uncommon that a client will inadvertently fail to communicate pertinent facts to his or her counsel simply because they are lay persons who do not recognize the significance of every single intricate detail; and other times, because the very emotional client simply cannot remember every single detail. One or both of these scenarios are plausible in the instant matter. Thus, the Plaintiff's counsel maintains that the aforementioned evidence was first learned by Plaintiff's counsel until mid- December 2022.

### B. The Robinson Statement was approved by Carrie Robinson

The Plaintiff strongly avers that she had permission from Robinson to type and to submit the aforementioned statement to the EEOC. Specifically, the Plaintiff argues that Robinson asked the Plaintiff to type the "Robinson's Statement" because Robinson was unable to do so due to her poor health. Plaintiff further submits that she and Robinson collaborated on the statement, as it was being typed, during a phone call[13] whereby, upon the completion of the statement, the Plaintiff orally read the statement to Robinson during the phone call. At the conclusion of the conversation, the Plaintiff submits that Robinson agreed that the statement was accurate and acceptable to be submitted to the EEOC. Remarkably, the Defendant has adamantly asserted that the Plaintiff has committed fraud without doing its own investigation into the credibility of Robinson's declaration.

Arguably, the Plaintiff asserts that it is quite peculiar that the Defendant deliberately took the time and resources to get a declaration from Robinson, stating that Robinson never

---

[13] *See* Exhibit A-The Plaintiff submits that she and Robinson had several conversations days before the submission of the aforementioned "Robinson Statement". Upon information and belief, in reviewing phone records, Plaintiff believes that the conversation whereby Robinson approved the submitted statement occurred on or about October 29, 2020. During this phone conversation, the Plaintiff and Robinson spoke for approximately a half an hour.

<u>*"wrote, reviewed, or approved"*[14] the "Robinson Statement"; but failed to get a declaration addressing the substantive nature of the statement itself.</u> The Plaintiff asserts that this is because the Defendant is intentionally seeking to manipulate this Court in an effort to divert its attention away from the substantive nature of the "Robinson Statement" and to ultimately discredit Robinson as a witness altogether – unfairly benefiting the Defendant.

Certainly, if Robinson's intention was to completely recant her statement, she would have signed a declaration to such effect. This fact supports the Plaintiff's counsel's factual support that Robinson reached out her on March 13, 2023, expressing her fear and frustration with the Defendant after having been contacted by it.[15]

Moreover, the Plaintiff asserts that in support of this asserted assumption, the Plaintiff submits that the Defendant has wrongfully assumed that the "Robinson Statement" is the only evidence that the Plaintiff relies on to assert her contention that the evidence is "newly discovered". The Plaintiff asserts that there is other evidence that the Plaintiff relies on to corroborate and substantiate the facts alleged as "newly discovered". In the Plaintiff's memorandum in opposition to the instant motion[16], the Plaintiff clearly asserts that she interviewed the witness and obtained additional details which supported the filing of the aforementioned motion. In other words, the Plaintiff asserts that she did not merely take an unsigned statement submitted to the EEOC and independently accept it as true. Additionally, the Plaintiff asserts that she did not even file the "Robinson Statement" into the record when she filed her Motion to Amend and Reconsider[17] particularly on account of the Plaintiff

---

[14] Rec. Doc. 33-1, p. 5.
[15] During this conversation with Plaintiff's counsel, Robinson stated that the Defendant was trying to get her to change her statement but she refused to do so. She stated that what she had communicated was the truth and she was not going to "say any different".
[16] Rec. Doc. 30, p. 13.
[17] Rec. Doc. 23.

relying on supporting evidence which corroborated the substantive facts alleged in the "Robinson Statement" as opposed to the tangible statement itself.

Consequently, the Defendant makes an incorrect assertion that the Plaintiff, *"without even trying to authenticate the unsigned statement or find out who did write it*–even though the Robinson Statement is unsigned,"[18] blindly relied on the "Robinson Statement". However, the Plaintiff asserts that this assertion is untrue. Contrarily, the Plaintiff asserts that the Defendant relying on its independent assumption that the Plaintiff did not conduct additional investigation of this statement is rather incautious and sanctionable.

Lastly, the Plaintiff asserts that there are facts included in the "Robinson Statement" which, more likely than not, substantiates the Plaintiff's version that Robinson collaborated with her to draft the "Robinson Statement." Specifically, the statement includes facts that only Robinson would know and that the Plaintiff would not otherwise know, except that Robinson disclosed them to her. For example, in the "Robinson Statement", it states,

> "The next day, everything was normal she[19] text me and said she was going to be late, I found it strange because I am not the manager, and Bionca was over her, but I just went on with my day, not knowing she was in the front office the whole time."[20]

The Plaintiff asserts that this is a fact that only Robinson would know and would have had to reveal to the Plaintiff in order for the Plaintiff to know. The statement does not indicate that this fact was revealed to the Plaintiff, at that time, nor does it indicate that the Plaintiff even knew that Robinson received the aforementioned text message from Arthur, at that time.

---

[18] Rec. Doc. 33-1, p. 5.
[19] Exhibit B- Robinson Statement, p. 6.- The "she" is referring to Sama Arthur texting Robinson that she would be late. **This is a fact only Robinson would know, outside of her disclosing it to the Plaintiff.**
[20] Exhibit B - Robinson Statement, p.6.

There are also inconsistencies between the statements indicating that there were, in fact, different perspectives and different articulations of the events as it related to expression of certain detail. Consequently, there does not appear to be an overlap of any direct "copy and paste" in either of the statements. Not to mention the Robinson Statement (6 pages) is double the amount of pages as compared to the Fleury Statement (3 pages).[21] The Fleury Statement states,

> "Why did she wait until she gotten her credentials to get into the system to say I was bullying her, she **received her credentials on that Wednesday** and Thursday at the close of work told Tiffany that I was bullying her, and then Friday I was being suspended."[22]

Whereas, when the same fact is being alleged in the "Robinson Statement", it states:

> "The week that Bionca got suspended, Summa just **received her credentials to access the work order program, on that Tuesday,** but she was not able to log in until Wednesday, …"[23]

The Plaintiff asserts that these two examples support the Plaintiff's contention that she had permission from Robinson to type and submit the "Robinson Statement" to the EEOC or at the very least, that she was communicating with Robinson regarding the events.

C. **Plaintiff is not alleging that her relationship with the Sama Arthur is newly discovered, rather, Plaintiff asserts these facts are additional facts which relate back to the original pleading and establishes the whole picture.**

The Plaintiff asserts that she was clear that these facts were intended to be asserted under the "relation back rule", as indicative of her detailed relation back analysis. The Plaintiff asserts that these facts provided a clearer picture supporting her allegations. As previously asserted, "a play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual

---

[21] Exhibit B - Robinson Statement; Exhibit C - Fleury Statement.
[22] Exhibit C- Fleury Statement, p. 2.
[23] Exhibit B - Robinson Statement, p. 3.

incidents, but on the overall scenario"[24] Plaintiff avers that these overall facts put into perspective the allegations made against the Defendant.

### D. As previously asserted, the continuing violation doctrine saves the Plaintiff's claims.

The Plaintiff maintains that the continuing violation doctrine applies here. Louisiana jurisprudence has consistently applied the continuing theory doctrine to LEDL claims as well as Louisiana Whistleblower claims.[25]

In *Watson*, the Court reasoned that the continuing violation doctrine did not save the plaintiffs' claims pursuant to the Louisiana Employment Discrimination Law, not because it does not apply to those types of claims, but because they did not occur within the 18 months prior to filing the complaint.[26] In our case, a timing analysis has already confirmed that based on the last continuous act occurring in July 2020, the Plaintiff's deadline to file her complaint would have been January 2022. Since the Plaintiff filed her complaint in December 2021, her claims are therefore, timely.

Additionally, in "the continuing violations doctrine has grown so closely associated with employment discrimination claims that some courts have assumed that the doctrine originated in cases interpreting Title VII.[27]

---

[24] *Rabidue v. Osceola Refining Co., Division of Texas–American Petrochemicals, Inc.*, 805 F.2d 611, 620 (6th Cir.1986).

[25] The Louisiana Supreme Court in *Bustamento* examined and followed federal case law in discussing the continuing violations doctrine. See *Bustamento*, 607 So. 2d at 540-42. Furthermore, "federal courts look to Title VII jurisprudence to interpret the LEDL." *Harrell v. Orkin, LLC*, 876 F. Supp. 2d 695, 701 (E.D. La. 2012) (Africk, J.). Accordingly, the above discussion of the continuing violations doctrine also applies to plaintiffs' LEDL claims.

[26] *Konate v. Inter-Con Sec. Systems Inc.*, Not Reported in F.Supp.3d (2014), citing "The above discussion of the **continuing violations doctrine** also **applies** to" plaintiff's **claim** pursuant to the **LEDL**. *See Watson*, 2014 WL 258999, at * 10 & n. 50; The Louisiana Supreme Court in *Bustamento* examined and followed federal caselaw in discussing the continuing violations doctrine. *See Bustamento*, 607 So.2d at 540–42. Furthermore, "federal courts look to Title VII jurisprudence to interpret the LEDL." *Harrell v. Orkin, LLC*, 876 F.Supp.2d 695, 701 (E.D.La.2012) (Africk, J.). Accordingly, the above discussion of the continuing violations doctrine also applies to plaintiffs' LEDL claims.; "

[27] Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984); Ware v. Union Pac. R.R Co. Omaha, 278 F. Supp. 2d1263, 1267 (D. Kan. 2003); In re Enron Corp. Sec., Derivative & ERISA Litig., 310 F. Supp. 2d 819,844 (S.D. Tex. 2004).

Thus, based on the above jurisprudence, the continuing violation theory does apply to LEDL and Louisiana Whistleblower claims.

### E. The July 2020 incident was not a discrete act, it was connected to Plaintiff's wrongful termination.

Moreover, the Plaintiff argues that the July 2020 incident does not constitute a "discrete act" as discussed in the cases cited by the Defendant.[28] Specifically, the Plaintiff argues that by the very nature of what has been allegedly purported in the campus police incident report, [29] is indicative of this fact. In the report, it states,

"It should be noted that when asked about Ms. Fleury's **non direct statements**, Ms. Arthur stated that there were no threats of violence toward her or anyone in the office just statements of **suing everyone involved in her firing**."[30]

This statement alone serves to connect both events, *i.e.* the Plaintiff's firing and the false allegations made against the Plaintiff. Further, the report establishes the Defendant's own admission that it contacted the campus police for matters **directly related** to the Plaintiff's wrongful and discriminatory termination. Moreover, the Plaintiff asserts that the report also establishes that the Plaintiff, in fact, did not threaten the Defendant. Lastly, the report establishes, the Defendant's own admission that it, **once again**, retaliated against the Plaintiff for asserting a protected right.

Therefore, the Plaintiff has clearly asserted her entitled to the benefit of the continuing violation doctrine extending the statute of limitations on her claims.

### F. Plaintiff can show legally actionable retaliation.

The Defendant alleges that the Plaintiff has not met all of the elements to assert a actionable retaliation claim. Specifically, the Plaintiff cannot establish that:

---

[28] *Hamic v. Harris County W.C. & I.D.* No. 36, 184 Fed.Appx. 442 (2006).
[29] Exhibit H- Campus Incident Report
[30] *Id.*

(1) she engaged in a "protected activity";

(2) an adverse employment action occurred; and

(3) there was a causal connection between her participation in the protected activity and the adverse employment action.

However, the Plaintiff asserts that she can. First, prior to the Plaintiff's termination, she contacted the Defendant's 1800 number to report her disparate pay and promotion. After the Plaintiff's termination, she allegedly asserted that she intended to sue[31] for the Defendant as a result of her wrongful and discriminatory termination. The Plaintiff asserts that both of these activities are protected under Title VII.

Second, the Plaintiff was wrongfully suspended and terminated as a result of inquiring about her pay and promotion, within days. After, the Plaintiff's termination and after the Plaintiff filed an EEOC charge, the Defendant called campus police on the Plaintiff and made false allegations against her. The Plaintiff avers that these are adverse employment actions.

Lastly, as discussed above, the Defendant clearly admits that it called campus police because she allegedly made a statement related to suing the Defendant for its wrongful actions. Moreover, the Plaintiff suspension and termination occurred within days of her inquiring about her pay and promotion. It is well settled that proximity between engaging in the protected activity and the adverse action is indicative of a causal connection.[32] Thus, the Plaintiff can establish an actionable retaliation claim under Title VII.

Additionally, the Defendant asserts that the Plaintiff's reporting the disparate pay and promotion are not tied to the Plaintiff's discrimination claim. However, the Plaintiff argues

---

[31] It is also important to note that the Plaintiff had already made an EEOC complaint at this time and the Defendant was already well aware of the charge.
[32] The temporal proximity between the protected activity and an adverse employment action can establish a causal link. See *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

that these two facts are closely tied. The Plaintiff asserts that the very reason she was not appropriately compensated and titled was because of her race.

Moreover, the Plaintiff asserts that the Defendant conspired with the Sama Arthur to construct actionable reasons for the Plaintiff's termination – even though they were false. Moreover, based on the "Robinson Statement", [33]Arthur was observed seemingly startled after the Plaintiff and Robinson observed her trying to secretly speak to Henry. The statement states,

"As we were leaving for the day, Me and Bionca was discussing one of her relatives that had a sick baby, I was asking how the baby was doing, and we just proceeded to talk about that while closing the office, me and Bionca noticed that Summa went outside and tried to getting into the stock room where Henry, she turned around and said Oh he must be busy we proceeded to walk to our cars to drive to the clock out station, she sat in her car while me and Bionca clocked out on the phone.

The next day, everything was normal she text me and said she was going to be late, I found it strange because I am not the manager, and Bionca was over her, but I just went on with my day, not knowing she was in the front office the whole time. Around 2pm after lunch, I was told to leave out the by Henry and Don and go in the back because they needed to speak with Bionca, the next thing they come and get me and said Bionca is on suspension pending investigation, and I went back to my desk. I was told to lock the doors and we was on lockdown, I am thinking why every time someone black gets fired we have be on lockdown and when someone white gets fired no one knows until way after and that is if they do"[34]

The Plaintiff asserts that this observation, coupled with her suspension, the very next day is indicative that there was some secrete communications between Arthur and the

---

[33] Exhibit B – Robinson Statement.
[34] Id.

Defendant taking place to manufacture a false reason, premised on discriminatory and retaliatory motives, to wrongfully terminate the Plaintiff.

Lastly, the Plaintiff asserts that her defamation claim in not defective. Again, the Defendant acknowledges, by way of the aforementioned Incident Report, that it called the campus police (a third party) and made false allegations against her.

### III. Conclusion

For the foregoing reasons, the Plaintiff respectfully requests that her Motion(s) be granted.

*s/JP Gorham*
_____
JP Gorham (Bar # 31746)
JP Gorham Attorney At Law LLC
PO BOX 86928
Baton Rouge, LA 70879
225-341-5939 Office
504-957-3551 Direct
jgorham@gorhamlawfirm.com

### CERTIFICATE OF SERVICE

I do hereby certify that on or before the 7th day of July 2023, I served a copy of the foregoing discovery responses on counsel for Defendant to this proceeding by either facsimile transmission, electronic mail, and/or by mailing same by United States mail, properly addressed, and regular postage prepaid.

*/s/J.P. Gorham*
_____
JP Gorham, Esq.